### In re KREUTER et al.

(District Court, S. D. California, S. D.   May 25, 1917.)

#### No. 2452.

ALIENS ☞61.—NATURALIZATION—ALIEN ENEMIES—APPLICATION PRIOR TO DECLARATION OF WAR.

A subject of the Imperial German Government, who has resided in the United States the required length of time, and who filed his petition for naturalization before the declaration of war with the German government, is not debarred from admission to citizenship since such declaration by Rev. St. § 2171 (Comp. St. 1916, § 4362), which provides that no alien citizen or subject of any country with which the United States is at war "at the time of his application shall be then admitted to become a citizen of the United States."

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 119–122.]

In the matter of the applications of Louis Kreuter and others for admission to citizenship. Applications granted.

TRIPPET, District Judge. Section 2171 of the Revised Statutes (Comp. St. 1916, § 4362) of the United States provides that:

"No alien who is a native citizen or subject, or a denizen of any country, state, or sovereignty with which the United States are at war, at the time of his application, shall be then admitted to become a citizen of the United States."

Further on in this section the aliens referred to in the sentence quoted are called, in two places, "alien enemies."

The question is now presented whether or not a citizen of the Imperial German Government can be admitted to citizenship in the United States who filed his petition to become a citizen prior to the declaration of war. The question involved in the controversy is whether or not filing a petition in writing prior to a declaration of war is the ap-

plication, or equivalent to the application, to become a citizen, mentioned in section 2171 of the Revised Statutes. This section of the Revised Statutes was enacted July 30, 1813, at a time when we were at war with Great Britain. The reports of the courts do not indicate that this section has been called into use since the general revision of the Naturalization Law adopted in 1906 (Act June 29, 1906, c. 3592, 34 Stat. 596). There exists certainly an ambiguity in the statutes, and the question of interpretation is now for the courts.

I have made up my mind to admit these applicants for citizenship who are citizens of the Imperial German Government. These people have lived here among us for more than five years, and more than two years ago made a declaration that they intended to renounce their allegiance to the Imperial German Government and to become citizens of the United States, and they now propose to take an oath as prescribed by law in which they will renounce their allegiance to the Imperial German Government and especially the Emperor of Germany.

In the President's message to Congress, which brought forth from that body the declaration that a state of war existed between the German government and the United States, the President stated that we accept the gage of battle "for the ultimate peace of the world and for the liberation of its peoples, the German peoples included." In another sentence of the President's message he declares: "We have no quarrel with the German people." Again the President says:

"We are, let me say again, the sincere friends of the German people. * * * We shall, happily, still have an opportunity to prove that friendship in our daily attitude and actions toward the millions of men and women of German birth and native sympathy who live amongst us and share our life, and we shall be proud to prove it towards all who are in fact loyal to their neighbors and to the government in the hour of test."

This is a war waged, as I understand it, by the Hohenzollerns and Hapsburgs, and not by the German people. My idea is that section 2171 of the Revised Statutes is aimed to prevent the admission to citizenship of "alien enemies." In view of what is said above, it would be hard for me to realize that these applicants fall within the letter of the statute in question, and I could not realize that they fall within the spirit of the statute.

In the Southern district of New York, where there are three United States District Judges, these judges concurred in a judgment admitting German citizens to citizenship in the United States, and the Circuit Court of Appeals has affirmed that judgment. I am informed that the Department of Justice was requested by the Department of Labor to take the matter to the Supreme Court of the United States, and the Department of Justice replied that after consideration of the subject it declined to take the case to the Supreme Court of the United States. I therefore regard the precedent set by the Circuit Court of Appeals as one that should be followed by this court. In accordance with this view, I will admit all applicants to citizenship who filed their petition prior to the declaration of war with Germany.

There is another matter to which I should refer. If it should appear to the Department of Justice that any one who will be admitted

to citizenship of the United States under this ruling is in fact disloyal, and that his proof here has been false and a pretense, the government has a right to institute proceedings and have his citizenship papers canceled.